Case number 23-2213, Continental Cement Company v. Secretary of Labor, et al. Mr. Shenberg? Yes, Your Honor. May it please the Court. The questions before the Court are what was it that made decision-maker Heather Ames decide not to give minor Tara Otten the upgraded pay at issue in this case? And does what made a difference in Ms. Ames' decision even matter in this case? The answer to the first what made the difference question is one of two things that both happened at the same time. Either it's the fact that Tara Otten did not perform upgraded work, and that's the reason she didn't get upgraded pay, or it's the fact that she was on a protected walk-around. Luckily, we can separate out these two things. Well, that argument assumes the main legal... It does, Your Honor. ...integrative law issue. Yes, it does. Let's get to what... Fair enough. ...what drives the train. Fair enough, because I think the evidence is clear that there is no retaliatory motive here. So the question is, is retaliatory motive necessary in a 105 case under the Mine Act? This case has been a little bit of a moving target because both parties briefed the case to the ALJ and said, yes, motive is required. The Pesula-Robinet test or a more recent version of it applies. Motive is what is required in a Section 105 case. Then the ALJ said, no, it doesn't. It's not necessary. It's essentially strict liability. It's just factual causation. The Commission, or a majority of the Commission, says, yes, it's just strict liability. It's just factual causation. No retaliatory motive required. Vocal dissent says, well, that's ridiculous. There's no authority for that. The Secretary now on appeal still sticks to the Pesula-Robinet test, which requires retaliatory motive, and yet doesn't introduce any evidence of retaliatory motive in their brief on appeal. As a matter of fact, they abandoned the evidence that they relied on below. You just, in passing, made an equation that I think may require some exploring, whether but-for causation and strict liability are the same. No, I 100% agree. I don't think that they are. I think the but-for causation, in a sense. That's the majority view of the Commission. That's correct. Not the concurrence dissent. Correct. The question, then, is what does the requirement, the words, that it has to be because of the protected activity, what does that mean? What I'd like to, what no one addresses and I'd like to hear comments on. What if, can we agree with the concurrence dissent? Can we adopt the Commissioner Althon's concurring decision? I think it is, at least the parts that I can recall, I agree with, which are that retaliatory motive, essentially retaliatory animus is the term that he uses. No, no, I'm talking about his bottom line. His bottom line. He violated 103F but not 105C. Well, let's be clear about what he says. He thinks that there could have been liability for a violation of Section 103. That's why he concurred. He disagreed with the remedy. He concurs. He disagreed with the remedy. He recognizes that the path to get there was not the one the Secretary took. No, he concurs that there was a violation but of a different provision. I think it's the same as if somebody said. No, it's not. Well, no. No, it's not. Fair enough. Because he said that he has a different remedy. He affirms the 103F finding of a violation. He dissents from, if I got the numbers right, the 805C. And then he says, okay, so the problem with the remedy is it's too strict. Well, that's not. I don't agree. Okay. He may have used the word concur. First of all, can we go there? And if we can go there, if so, then why not do that? And if we do, what's the result? All right. So, I mean, I think the answer is no matter what the third commissioner said, he clearly says in his reasoning that we can't get liability under Section 105, which is the section that the Secretary brought. Now, he may, for whatever reason, go along with the commissioners and say, we're not going to be concerned about such niceties as which section the Secretary sued under. We find that there was a violation. It was a violation of Section 103. They could have pursued it under Section 104. The point I want to make is that they didn't pursue it under those sections. Who did? The Secretary. Tara Otten, a minor, didn't start this case that way, and the Secretary didn't file a complaint under Section 104. Your argument is that you are saying the concurring opinion, we can't adopt it because it's inconsistent with the case brought. I think that's right, and I think that it may have labeled itself a concurring opinion. It's not really a concurring opinion. No, it labeled itself concurrent part to Senate part. Right. Well, I think that it doesn't concur either in the conclusion that Section 105 was filed. Now you've told me why we shouldn't. Suppose we do adopt his result. I think that it would be a violation. It's a misinterpretation. It's a misapplication of Section 105. It is not what Section 105 requires. No, no, no. I'm saying he says throw out this Robinette completely, and the majority is wrong because they don't explain why they keep it for everything except a 103F problem. I think the majority has thrown out Robinette altogether and said we don't need Robinette. There's no – They've gone to but-for, but I'm not sure the Ninth Circuit threw it out. No, they have gone to – Construed it as but-for. Sure. Let's talk about the term but-for. I think that's the key here, which is when the Supreme Court said but-for causation in Gross, and it said it in University of Texas v. Nassar, it's not talking about being a but-for cause in the sense that it's just – all it has to be is a preexisting fact in the chain of causation. The bottom line is, as Justice Breyer often said, it's context-specific. Right. Now we've got to – we have a very – as Commissioner Althern pointed out, this is a very specific context. It's a specific – And so you have to take all of these Supreme Court opinions that wander over a very broad landscape, and you can't just pick out your friends. No, but – You've got to put it in this context. That's fair enough. And he's the only one, in my view, that did that. The bottom line is that in every discrimination statute the Supreme Court has looked at, they say that when a statute says we prohibit you from taking adverse actions because of something, what they mean is that retaliation claims that you can't do that because motivated by that. And if the motivation is a but-for cause, the illegal motive, if that's a but-for cause, then it affects the shifting of the burden of proof. And that's not necessarily illegal. But-for just means it wouldn't have happened otherwise. Well, that's what it means when you're just talking about a chain of factual causation. And that's the Secretary's position, and that's fundamentally what the Commission majority said. Not today. It's just – Today they're for affirming. Well, no, but I'm saying that they are – They're not in review. They are arguing that all that's required is factual causation. That, well, if I hadn't been on the walk around at the mine, that I would have been performing the upgraded work, and therefore I'm entitled to the money. Forget about what the motive was in making the decision because the decision-maker didn't care. That's what Althorne said. That's what the – That's not what the majority said. Correct. And it's not what the government's arguing because it's arguing for the majority, which is it's not just it wouldn't – If you take – She testified, well, I always got MEO pay when I opted to do my – play my union role on a day when I would otherwise have been the senior laborer and therefore would have gotten an MEO assignment. Yes. That's motive. It doesn't turn on motive. It turns on the object knowledge. That's their argument is that that's all that has to happen. That's right. Right. If I hadn't been here, I would have been here, and I would have gotten the money. Okay, but that's – That's their argument. What I'm saying is that's not what a Section 105 claim requires. A Section 105 claim requires more. The Ninth Circuit disagrees with you on that. I read – I mean, yes, they didn't do away with the other test for all time, but they did say this is but for causation in the traditional sense. But for this, would that have happened? I don't think that's what they're saying. I think they're adopting the Supreme Court. All these cases are following the Supreme Court's decision in gross, which was in the age discrimination statute. But that's what they're all doing. They're not making it easier to prove a case. They're making it harder to prove a case. They're saying that but for causation – and the Secretary agreed with this in the brief – that what but for causation in the gross case and Thomas versus Cal Portman do, they're just affecting the shifting of the burden of persuasion. Because it used to be that a plaintiff would say, well, there was some motive, some discriminatory motive, and the defendant would say, well, no, we had this other motive, this legal motive, and then the burden would shift back to the plaintiff to say – or this burden would be to the defendant then to say, well, we would have made the same decision anyway. So even if we had partly an illegal motive, we would have made the same decision. What gross does is say no. In a statute where it says because of, you know, the defendant never gets the burden. The plaintiff has to show from the beginning that the retaliatory motive was the but for cause. They're not talking about fact cause. I agree that it's not as clear as it could be what they're talking about, but they're not talking about just being a link in the chain of causation. I thought it was about protected activity, not retaliatory motive, at least at bottom when you read the statute. Now, you may want to imply retaliatory motive, which I understand you to be arguing, but here the plain language just talks about the protected activity. It lists three things, a medical evaluation, filing of a complaint, you know, exercise of a statutory right. That's all I see in the statute. What the statute says is you can't do these things because the minor did these things. The legislative history of Section 105 shows it's meant as a prohibition on retaliatory conduct. The Supreme Court looked at the similar language in Title VII's retaliation provision and says that because of in a statute means that a retaliation claim requires proof of the desire to retaliate. That's a quote from the Supreme Court's opinion in University of South Texas. In what case? University of Texas versus Nassar, N-A-S-S-A-R. That's what the Supreme Court means. When a statute says because of, you have to show retaliatory animus in the mind of the decision maker. And that's been our point from the whole beginning of this case. Your Honor, I'm sorry. Go ahead with your question. As I read the ALJ's opinion, he actually held that the defendant was motivated by the exercise of a protected right. Did he not? The ALJ did find that. But he didn't cite any evidence of it. And the commission completely discussed it. I'm sorry. I'm not sure of my question. Sure. And I believe that the commission said that finding was supported by substantial evidence. Did it not? I don't recall if it did or didn't. It certainly didn't rely on that. It said you don't need retaliatory motive at all, despite the fact that. Why isn't that a difficulty for your case if that's the holding? Well, I can tell you this because there's no evidence of any actual retaliatory conduct. So you're saying that's incorrect. I am saying that that is incorrect. Not only am I saying that is incorrect, Your Honor. I'm saying that the secretary on appeal has abandoned all such evidence. Has what? Has abandoned all such evidence. Forfeit the issue. Okay. Because in our opening brief, we debunked all the evidence. So what? Well, we debunked all that evidence in our opening brief. We review the commission. We don't review the secretary's brief. Come on. That's correct. But there's nothing in the commission's holding either that points to any evidence. They just say that. It was an alternative holding. I will consent for purposes of. We can take it. It's either or. We can go either way. That doesn't change the fact that what they said is wrong. And that's the whole reason we're here. We think what they said is wrong. Wait, wait. Wrong legally or wrong because there's no substantial support? Both.  100% both. Because legally, because of in section 105. Ms. Ames. Ms. Ames. That answers that question. She said it was because of. No, she's talking about in the chain of causation. But she's not talking about retaliatory motive. She's not talking about the mind of the decision maker, which is the focus in a retaliation case. That's what the ALJ was talking about? The ALJ is talking about factual causation. It was a link in the chain of factual causation. I think. Well, I think it's unclear. But anyway. Well, I would point the court to the cases that I cited in our brief, including Kip and Musser, which make the distinction between when something's part of the link in the chain of factual causation and when it is the motive for the decision. For example, the one that comes to my mind is an employee is off on FMLA leave. And because they're off on FMLA leave, the employer finds in their desk evidence of embezzlement. Now, I'm not comparing what happened here to that. But it illustrates the point that those are two different things. A true sentence would be, well, I was terminated because I was on FMLA leave. In the sense that, well, if I hadn't been on FMLA leave but for my being on protected FMLA leave, I never would have gotten fired. That's true. It is a but-for cause in the sense of the factual chain of causation. But it had nothing to do with the reason for the decision-maker. In that case, the decision-maker was acting because of, motivated by, the evidence of embezzlement that they happened to discover while there was a protected activity going on on the leave. And in this case, the real motive, what was in the decision-maker's mind, had nothing to do with the fact that the minor was on walk-around. It had everything to do with the simple fact. Well, it would certainly be an appropriate finding of facts under this record. I agree with that. But, I mean, it's not clear to me the ALJ thought that. The ALJ didn't cite a single piece of evidence because there is none. Because the only evidence which we laid out. Well, she was known as a safety nuisance, was one of the pieces of evidence that was advanced. This was simply a way of getting back at her because she was constantly making complaints about safety. That's not been advocated for on appeal. And I think that there's ironclad evidence here that shows that it made no difference in the mind of the decision-maker or Continental where she was or why she wasn't performing the mobile equipment work. In fact, the secretary repeatedly emphasized below, they treated being off on a mining inspection the same way they treated being on vacation. And that's exactly right because Continental is completely indifferent to the fact that she happened to be on a mining walk-around. All Continental cared about, all that was in the mind of the decision-maker, is the fact she didn't perform the mobile equipment work. So she gets no mobile equipment upgrade. That's all they were focused on. That's the sense in which there is no because of here. There is no decision motivated by the fact that she happened to be on a walk-around. What motivated the decision, what made the decision, I recognize that I'm out of time and I apologize. If I could just finish the one sentence and say, the evidence, the undisputed evidence, the stipulated evidence shows that whether and when Tara Aden and all the other miners got upgraded pay is solely the result of whether and when they performed upgraded work. It didn't matter if they were on a walk-around, on vacation, or anywhere else. And that is why we should win this case because retaliation is required under the statute, the because of language tells us that, and there is no evidence of retaliatory decision-making here. I thank the Court for its indulgence. Any other questions? May it please the Court, Sarah Karchunas for the Secretary of Labor. Continental Cement's petition for review should be denied for two reasons. You're going to have to speak more clearly. First, substantial evidence supports the ALJ's decision affirmed by the commission that Continental retracted Aden's pay upgrade because she was on an MSHA walk-around instead of operating mobile equipment. Second, Continental is asking this Court to add an additional requirement into 105C of the Mine Act, a requirement of showing the decision-maker's personal and subjective intent. Your Honors, this case is straightforward and Continental tries to make it much more complicated than it really is. Section 105C of the mine... So motive is completely irrelevant? No, Your Honor. There's a very specific place for motive in the sense of this... Let's go there. Yes, absolutely. The traditional test that the commission has used in analyzing these 105C... I don't mean the whole history, but... Oh, yes, Your Honor. The case as presented was the secretary... Everybody agreed the secretary must prove the protected activity motivated the adverse action. Your Honor, two parts to that answer. The first is, yes, there has never been any going back and forth as to whether or not the adverse action must be caused or motivated by the protected activity. That is something different than looking into whether or not the action was taken out of a desire to retaliate. Those are two separate things. And as to the question of where this animus plays in, it plays into a specific part of the PASUA Robinette test, and that's what I was sort of going into. Why did you use the word animus? What was that? Why did you just use the word animus? I thought that was the whole fight. Yes, Your Honor. Because of doesn't require animus. Right, and so... And yet you used it, I think reflecting administrative bias or preconceived notions. Your Honor, if you could let me explain in the test where animus comes in, I could explain why it isn't required, but it is in some situations can be helpful. Could you prove it here? No, because you do not have to show animus. It is under the PASUA Robinette test... Why did you use the word then? Because, Your Honor, I asked whether animus was relevant, and it is under one... Because of the thin-grain thinking of the agency. No, Your Honor, I disagree. Under the PASUA Robinette test, you can show direct evidence of discrimination or circumstantial evidence of discrimination. Direct evidence of discrimination is something akin to exactly what we have here. We took away the wage upgrade... She got paid for the work she would have done that day. But she didn't, Your Honor. She didn't get paid for the work she would have done that day. She didn't exercise. She would have had to do something affirmative to work as an MEO operator that day. But it's undisputed. She would have had to say, yeah, I'm senior, I take it. It's undisputed. And Continental's brief on page 37, they admit is undisputed, that had she not gone on the walk around, she would have been paid the upgrade. That's different. That's not what I said. She had to do something affirmative not to be paid as a laborer that day. She had to accept her opportunity at the end of the bargaining agreement to work as an MEO operator because she had the highest priority. Your Honor, but she should not have had to choose between attending the walk around and being paid the amount that she would have been paid had she not. She wasn't made to choose. She did have to make that choice because had she not been on the walk around, she would have been paid a higher amount. Well, she would have done completely different work. Your Honor, she would have been doing the mobile upgraded wage work and that's what's undisputed. You're assuming that if she hadn't done a walk around, she would have still that day wanted to be an MEO operator. That's undisputed. Wait, undisputed? You mean because she said so in testimony? No, because Continental says it is undisputed that Otten would have operated mobile equipment and thus earned upgraded pay if she had not been on an MSHA inspection. Did the ALJ make that finding? Yes, both of them. Both the ALJ and the Commission found that but for going on the walk around, she would have been the most senior operator. She had never turned down the pay. She would have gotten the mobile upgraded pay. That's different. Yes. Okay, it's undisputed. She would have been given the opportunity as most senior laborer. And it's undisputed she would have taken it too. If I could just back up. There's no finding. I'm not sure. Continental admits this and both the ALJ and the Commission find that but for going on the walk around, she would have been paid the upgraded pay because she would have accepted the mobile operator role. I think I'd like to hear you speak to the question of what meaning can you give to the word discrimination if it doesn't require some evidence of motive? Absolutely, Your Honor. So... That's really my difficulty. Under any test, Postula Robinette, the Cal Portland test, under any test, the question at the heart of this was an adverse action taken against a minor's representative because of the protected activity. But the word discrimination is in the statute, is it not? It is. The discrimination... Why is it? I mean, it isn't just simply that they failed to pay her when she was entitled to be paid. They have to have discriminated against her in failing to pay her. Isn't that right? Right. The discrimination is that it's caused by the protected activity. It's not a discrimination. I disagree, Your Honor. I don't get that. I'm sorry. I'm probably being too simple-minded here. I notice that the word retaliation is not used, although many people talk about this as a retaliation provision. That word's not in the statute. Discrimination is the word. Right. Your Honor, the Secretary's position is that the discrimination is the fact that she... Failing to pay with money that's due is a discrimination. Right. The adverse action because of the protected activity, those two parts of it. Not that part, but it's the discrimination part that I'm focusing on. Why is that a discrimination? I mean, usually the word discrimination carries with it some freight that implies animus of some kind. Where's the animus? Your Honor, respectfully, I disagree. And I would like to point to the Supreme Court's decision in Bostock v. Clayton County, where the Supreme Court, in a different kind of parallel case in the Title VII context, tried to answer the question of what it means to discriminate because of sex and rejected employers' arguments that because they didn't intend to discriminate based on sex, they weren't discriminating based on sex. I think that's your best case. Your Honor, and additionally, in Bostock, they cite, I think, even a more helpful case. It seems to undermine some of the stuff they've said in other cases, though. I mean, I realize we have to figure out what they said, and we will, and we'll do it. But I just find that case somewhat contradictory. Your Honor, I think that it might be even more helpful to look at the case that they cited, Los Angeles Water and Power v. Manhart. I think that this provides a really clear illustration of why animus doesn't matter here. That was also in the Title VII context, and in that case, the employer was making women pay more into their pension funds than men under the idea that women typically live longer than men and will collect more from the pension. The Supreme Court found that on all accounts, there was no animus here. There was no intent to try to take something away. That's making a difference between men and women. So that is a discrimination. There might not be any animus in the sense that we don't like. There's no necessary finding to rule in favor of the women to say that, well, they did it because they don't like women. I agree with that. But here, we don't have a race or sex to help us claim, to help us decide whether a difference was made. No difference was made here. There's one person, and she didn't get paid. That's your case. Your Honor, I think that the parallel doesn't come from trying to find a protected characteristic like race or gender. It comes from the fact that the question there was an action taken because of X, X being a protected characteristic there. And the helpful parallel is that here we're asking what was an adverse action taken because of a protected activity. And so I think the parallel comes because the question is, does it matter what the internal disposition of the decision maker was? And in that case, the decision maker had no sort of out-to-get-it feelings towards women. I just got to follow up on this because I just wonder whether the answer actually lies in the fact that somebody ended up taking on the MEO duty. He or she got the elevated pay, and the minors representative here, the plaintiff, did not. I mean, is the answer as simple as that? Because Judge Reynolds is right. You've got to compare people, but isn't there, I mean, I don't know this to be true on the record, but if somebody else got paid more and got the duty despite not being senior, then that would be discrimination, wouldn't it? Yeah, I think that the fact that someone else filled in the position and may have also gotten paid the upgraded pay because they operated the mobile equipment doesn't really affect the analysis of whether or not this minor's representative would have gotten the upgraded payment but for her participation in the walk-around activity. That's the discrimination. And I think the confusion comes into play when Constantin makes the argument of, you know, we treated this minor's representative just like we treated these carpenters who also had their upgrade taken away because they weren't doing upgraded work. And I think the point there is that that is the problem, is when you're treating protected activity the same as unprotected activity. I think a sort of theoretical Title VII parallel that helps us see this would be like an employer who says, no one can wear any head coverings and says the same to the guy with the baseball cap and the person who's wearing a religious head covering. No more analysis is needed. I just don't like the look of people having things on their head. Well, let me ask you. I want to move on. So at least on one point, it's related, but it's a different point. In the context of this case, I'm just going to be blunt. The government's interpretation of the statute makes no sense. It makes sense if other types of protected activity are included, but I just sort of replaced the words and put some dot, dot, dots. Literally what you're asking here is, did the operator, here continental, interfere with the exercise of the statutory rights of any representative of minors, and there's some dot, dot, dots, like I said, because of the exercise by such representative of minors of any statutory right afforded by this chapter. So what you are essentially asking is, did the operator interfere with the statutory right because the plaintiff exercised a statutory right? The answer 100% of the time is yes. There's nothing to prove, because you would not have interfered with it but for the exercise of that right. So isn't that a problem? Your Honor, I think the first part is that interference and discrimination are two separate claims here, and so while there is a potential claim that could have been brought about whether or not this sort of action led other minors' reps to think, oh, I shouldn't be a minors' representative, and interfere with their potential rights to do so, that's not the claim that was made here. It was a discrimination claim that's based only on the fact that the statute prohibits discrimination and adverse action because of the exercise of a protected right. The protected right here is found in Section 103F. That right is the ability to go on a walk around with an EMCHA inspector as a minors' representative and not suffer a loss of pay for that. So that was the right that was taken away when Tara Otten was not paid what she would have been paid had she been walking around on, or had she been operating the mobile equipment. So if this was an interference claim, your argument, which is also part of the same statute, I mean the interference is part of the exact same statute, then there might be some nonsense, but because we're talking about discrimination in particular here and not interference, that we're safe from sort of that conundrum of it being 100% of the time the same thing. The problem, though, is that discrimination has the same problem, which is that the discrimination is the basis on not getting paid, which she had a statutory right to do. And was that because she exercised her statutory right? I think the answer is almost always going to be yes, in the government's view, if you don't import some sort of animus or discrimination. Your Honor, I think that there still is that requirement of causation, and I think what separates it from 103F and might address this problem is that 103F is a strict liability statute, and so you might have a circumstance where something went wrong with the accounting and the minor did not get paid properly for the time that she spent walking around with MSHA. That would be a violation of 103F, which is a different administrative pathway and would not require any type of knowledge on the part of any decision-maker because it was an administrative error, and that would not be a violation of 105C because an action wasn't taken because of the exercise of a protected right. That brings me back to where I started. If the only violation here was 103F, what do we do? Your Honor, I don't think it's possible to determine the only violation here was 103F because... That's not an answer to my question. You can say I don't know, or you can say I'm not authorized to say. Your Honor, maybe you could elaborate more on if this is a 103F case. This was nothing but interference. If this was talking about interference, that's still 105C. It's just a different kind of 105C claim. If the only thing was the violation of a strict liability obligation... Yes. Then what? What do we do with this appeal? Well, then I think if that was the case that we were looking at, it would also be a violation of 103F too because she was paid less. We're looking at an administrative record. If I conclude that's all you proved, what do I do with this appeal? Your Honor, I think that there's an exception to the Chenery... No, I just answer the question. I think that you prefer my different grounds. Do I deny review? You deny review. Do I deny enforcement or do I remand? Neither. You deny the petition for review because this decision was mandated by the statute and would not come out any other way. That's an exception to Chenery. I'm saying you didn't prove 105C. All you proved was 103F. Now what do I do with the case you didn't bring it under 103F? Do I remand or do I deny enforcement? Period. Up or down? I don't think I understand the difference between bringing this 103F case from the start and this just... Couldn't you have asserted a violation of 103F like Commissioner Althorn said you should have? No, Your Honor. The complaint was brought to us as a 105C complaint and under the Mine Act. By whom? By Tara Otten. Who? The Miner's representative. Well... And that's what the statute mandates is that if a 105C complaint is made to MSHA, MSHA must move forward. MSHA moved forward just how the statute required. So they should have said you filed the wrong claim. Do you want to go home or do you want to amend or add? No, Your Honor. They shouldn't have because the action was taken because exactly what the decision maker said. She made the decision because the Miner's representative was on an MSHA walk-around instead of operating mobile equipment. So 105C was met and it wouldn't make any difference to tell the Miner's representative bring this as a different claim when... All right. You won't answer the question. That's fine. I apologize, Your Honor. I'm genuinely trying. No, I gave you an up or down and you wouldn't... I'm sorry. I didn't understand. You said none of the above. That's fine. Maybe that's an answer. I think we're... I think we've done it all. I think I can offer some helpful... One minute. One minute. Thank you, Your Honor. I want to expose what's going on here. The Secretary wants to say that it doesn't matter what's in the mind of the decision maker. It doesn't make any sense based on the Secretary. This is repetitive. Well, I will point to Section 105 case law specifically. I won't go to the things I talked about comparing it to Title VII, okay? The reason 105 cases talk about the difficulty of proving motive with direct evidence is because it's difficult to get into the mind of the decision maker. The reason that animus is one of the factors that you look at as circumstantial evidence to prove motive under the Pasula Robinette test, the reason animus is one of the factors is because you're trying to get a look into the mind of the decision maker. It's what's motivating the decision maker that matters for a Section 105C claim. That's your argument. That is my argument, and there's just no evidence of it. That's not the argument of the Secretary this morning. There's no evidence to sustain what Section 105 requires. Thank you, Your Honor. I appreciate it. Thank you. Well, the case has been thoroughly briefed and argued. It's difficult, as many administrative law cases are, and we will take it under advisement.